OVERTON, Justice.
The Ninth Circuit Judicial Nominating Commission seeks a writ of mandamus directing the Honorable Robert Graham, Governor of the State of Florida, to use the merit selection process to fill judicial vacancies which occurred in August, 1982. Granting the writ would necessitate a vacation of the governor’s order calling a special election to fill those vacancies. We have jurisdiction. Art. V, § 3(b)(8), Fla. Const.
The Court considered this cause as an emergency matter, heard oral argument, and on August 31, 1982, issued an order denying the writ. In our order we advised that our reasons for denial would be expressed in a subsequent written opinion.
In considering the Judicial Nominating Commission’s petition for mandamus, we found that the Commission had standing to seek the writ, but determined that the petition should be denied on its merits. We conclude that the constitution mandates an election when there is sufficient time to afford the electorate an opportunity to fill a judicial vacancy.
*11 The facts are uncontroverted. The Honorable Thomas E. Kirkland, Circuit Judge for the Ninth Judicial Circuit, died on August 6, 1982, and the Honorable Richard B. Keating, Circuit Judge for the Ninth Judicial Circuit, died on August 16, 1982. Also on August 16, 1982, the Honorable James Stroker, County Judge for Orange County, created another vacancy by resigning from office effective January 1, 1983, to run for the vacancy in the office of circuit judge created by Judge Kirkland’s death. Governor Graham ordered special elections to fill these vacancies. October 5, 1982, the date of the second primary, was set as the date for the first nonpartisan special judicial election, and November 2, 1982, the date of the general election, was set for the second or runoff nonpartisan judicial election. September 3, 1982, was set as the last day for qualifying for the vacancy created by Judge Kirkland’s death, and September 7, 1982, was set as the last day for qualifying for the vacancies created by Judge Keat-ing’s death and Judge Stroker’s resignation.
The governor, in his response to this petition, challenges the standing of the Ninth Circuit Judicial Nominating Commission to bring this action. A nominating commission is a constitutionally established body, mandated by the constitution to submit the nominations of three persons to the governor within thirty days following a judicial vacancy. See art. V, § 11, Fla. Const. We have expressly held that the nominating commissions are part of the executive branch. In so holding, however, we recognized the constitutional independence of the commissions and the requirement that the fulfillment of the commissions’ duty be free of the governor’s influence. To effect this constitutional intent, we held that the governor may not impose rules of procedure upon the commissions because to do so might destroy the commissions’ “constitutional independence.” See In re Advisory Opinion to the Governor, 276 So.2d 25, 30 (Fla.1973). In that case we concluded that “[w]hile the function of the commissions is inherently executive in nature, the mandate for the commissions comes from the people and the Constitution, not from the Legislature, the Governor, or the Courts.” Id. at 30. We hold that since the nominating commissions are constitutionally created, with independent duties concerning the filling of judicial vacancies, a commission has standing to seek a writ of mandamus to allow the commission to perform its nominating function.
On the merits, the question to be determined requires a construction of article V, sections 11(b) and (c), which provide:
(b) The governor shall fill each vacancy on a circuit court or on a county court by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next primary and general election, one of not fewer than three persons nominated by the appropriate judicial nominating commission. An election shall be held to fill that judicial office for the term of the office beginning at the end of the appointed term.
(c) The nominations shall be made within thirty days from the occurrence of a vacancy unless the period is extended by the governor for a time not to exceed thirty days. The governor shall make the appointment within sixty days after the nominations have been certified to him.
(Emphasis added.)
These constitutional provisions provide for the use of the merit selection process, but only for a term which ends in January of the year following the next primary and general election. The purpose underlying article V, section 11, is to provide for the election process at the next available primary and general election. In Spector v. Glisson, 305 So.2d 777 (Fla.1974), we held that if a judicial vacancy is known reasonably in advance of an intervening primary and general election, the vacancy must be filled by election. The holding in Glisson was predicated upon the fact that the constitutional provision was intended to have the election process select members of the judiciary if the electorate had adequate knowledge that a vacancy would occur and that candidates could qualify and run dur *12 ing the regularly scheduled primary and general election process. In In re Advisory Opinion to the Governor, Request of September 6, 1974, 301 So.2d 4 (Fla.1974), we advised the governor that he need not call a special election and should utilize the merit selection process when knowledge of a vacancy occurred at or after the time of the first primary election. This conclusion was based on the fact that the timing of the vacancy made it impossible to practically afford the electorate an opportunity to fill the vacancy in the 1974 elections. In that instance, we held that the governor could appoint for a term ending in January, 1977, meaning that the office would be subject to the 1976 election process.
In summary, if the vacancy is known in sufficient time to schedule a special election during the already scheduled primary and general election dates, then a special election should be held. On the other hand, if an irrevocable communication of an impending vacancy is presented to the governor at the time of or after the first primary, then we have held there is insufficient time to use the primary and general election process during that year and the governor is authorized to use the merit selection process for a term ending in January following the general election two years later.
We recognize that this interpretation of article V, section 11, has the practical effect of denying a community a needed judicial position for as long as six months when vacancies can only be filled by the election process. Few, if any, individuals would proceed through the nomination process because of the limited term they would serve, unless they had qualified to run for the vacancy. The end result is that vacancies occurring between July 1 and September 1 of an election year are not ordinarily filled until January 1. We cannot rewrite the constitution, and it is clear that the framers of the constitution intended the election process to be used except “when there is no earlier, reasonably intervening election process available.” 305 So.2d at 784.
To avoid this temporary loss of judicial manpower, as illustrated in the instant case, two suggested remedies were presented by the 1978 Constitutional Revision Commission. The first provided that the merit-selection, merit-retention process now used for appointment of appellate judges would also be used for appointment of trial judges. The second retained the election process for trial judges but provided for the filling of trial court vacancies in the same manner as appellate court vacancies, with the appointment being for a term ending on the first Tuesday after the first Monday in January of the year following the next general election occurring at least one year after the date of appointment. Adding the phrase “occurring at least one year after the date of appointment” would have eliminated the problem that the Ninth Circuit is experiencing in this case.*
For the reasons expressed, we find that the governor properly called for special elections for each of the judicial vacancies. The petition for mandamus has been previously denied.
It is so ordered.
ALDERMAN, C.J., and McDONALD and EHRLICH, JJ., concur.
ADKINS, J., concurs in result only.
BOYD, J., dissents with an opinion.

 Proposal, Constitutional Revision Commission: SECTION 11. Vacancies.—
(a) The governor shall fill each vacancy on the supreme court, on a district court of appeal, on a circuit court, or on a county court by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next general election occurring at least one year after the date of appointment, one of not fewer than three persons nominated by the appropriate judicial nominating commission.