824 So.2d 132 (2002)
ADVISORY OPINION TO the GOVERNOR re: APPOINTMENT OR ELECTION OF JUDGES.
No. SC02-1213.
Supreme Court of Florida.
July 10, 2002.
*133 Steven L. Brannock of Holland & Knight LLP; and Karol K. Williams of Karol K. Williams, P.A., Tampa, FL, for Interested Party, Martha J. Cook, Candidate for Circuit Court Judge Group 30/13th Judicial Circuit.
Carlos A. Pazos, pro se, of the Law Offices of Carlos A. Pazos, P.A., Tampa, FL, for Interested Party, as a Candidate for Circuit Court Judge Group 30/13th Judicial Circuit.
Kenneth C. Whalen, pro se, Tampa, FL, for Interested Party, as a Candidate for Circuit Court Judge Group 30/13th Judicial Circuit.
The Honorable Jeb Bush
Governor, State of Florida
The Capitol
Tallahassee, Florida 32399
Dear Governor Bush:
We have the honor of responding to your request for our opinion as to the interpretation of a constitutional provision affecting your executive powers and duties. Your request was made, and our opinion is provided as authorized by article IV, section 1(c) of the Florida Constitution. Upon receipt of your letter, we issued an order permitting interested parties to file briefs in order to be heard on an expedited basis on the question you presented.[1] The pertinent parts of your letter read as follows:
Pursuant to Article IV, Section 1(c), Florida Constitution, I hereby request your opinion on a question involving the interpretation of my executive powers and duties under Article V, Section 11(b), Florida Constitution.
The basis for this request is set forth below:
1. On May 30, 2002, this Court entered an order declaring Judge Florence Foster of the Thirteenth Judicial Circuit involuntarily retired effective as of midnight May 30, 2002, due to a physical disability which seriously interferes with the performance of her judicial duties. [See Inquiry Concerning a Judge, No. 02-176 Re: Florence Foster, SC02-1110 (Fla. order filed May 30, 2002).]
2. Judge Foster was serving a term of office which would have ended on January 7, 2003, had her service not been terminated by involuntary retirement. *134 The judgeship held by Judge Foster was designated as Group 30 of the Thirteenth Judicial Circuit.
3. During the period May 13 through May 16, 2002, three persons qualified with the Division of Elections of the Department of State as candidates for election to the judgeship designated as Group 30 of the Thirteenth Judicial Circuit. The persons qualifying as candidates were: Martha Cook, Carlos A. Pazos and Ken Whalen.
4. A question has arisen whether the vacancy created by the involuntary retirement of Judge Foster should be filled by appointment pursuant to the provisions of Article V, Section 11(b), Florida Constitution.
5. Article V, Section 11(b) provides: The governor shall fill each vacancy on a circuit court or on a county court, wherein the judges are elected by a majority vote of the electors, by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next primary and general election occurring at least one year after the date of appointment, one of not fewer than three persons nor more than six persons nominated by the appropriate judicial nominating commission. An election shall be held to fill that judicial office for the term of the office beginning at the end of the appointment term.
6. Under these constitutional provisions, if an appointment is made to fill the vacancy created by the involuntary retirement of Judge Foster, the person appointed will serve a term ending on the first Tuesday after the first Monday in January, 2005, and no election to fill the position will be conducted this year.
7. If no appointment is made, and an election to fill the position is conducted this year, the judicial office left vacant by Judge Foster's involuntary retirement will not be filled until January, 2003.
8. If an appointment is made, the judicial office left vacant by Judge Foster's involuntary retirement will most likely be filled by September, 2002.
9. In Pincket v. Harris, 765 So.2d 284 (Fla. 1st DCA 2000), the Court held that the vacancy created by the resignation of a circuit judge effective June 20, 2000, from a judgeship for which an election was scheduled that year should nonetheless be filled by appointment. In Pincket, the statutory qualifying period was scheduled for a period after the vacancy had occurred.
In light of the foregoing circumstances, I respectfully request the opinion of the Justices of the Supreme Court on the following question:
Should an appointment be made pursuant to Article V, Section 11(b), Florida Constitution, to fill a judicial vacancy which occurs after candidates have qualified for election to the judgeship which has become vacant?
Letter from Governor Bush to Chief Justice Wells of May 31, 2002, at 1-3.[2]

ANALYSIS
The issue in this case concerns the proper method of selecting circuit and county judges in the situation where a vacancy occurs in a circuit or county judge position during an election period. The conflicting directives are contained in article V, section 10(b)(1), (2), and (3)c.,[3] Florida *135 Constitution, relating to the election and retention of circuit and county judges, and section 11(b),[4] Florida Constitution, relating to the filling of vacancies occurring in the circuit and county courts. The precise issue we address is whether your constitutional authority and obligation to fill a vacancy pursuant to section 11(b) continues after the election process begins for the specific election of a circuit or county judge for the term which will begin in January after the impending election. We find that the election process for the election of circuit and county judges mandated by section 10(b)(1) and (2) and implemented by section 105.051(1), Florida Statutes (2001), begins when a candidate or candidates have qualified for the circuit or county judgeship. See ch.2002-17, § 23, Laws of Fla.
The constitutional sections do not provide an express answer to this question but rather do appear to be in conflict in respect to the election section and the vacancy section. The election section expressly states that "the election of circuit judges shall be preserved...." Art. V, § 10(b)(1), Fla. Const. Article V, section 10(b)(3) required a referendum in the year 2000 to be placed before the voters in each of Florida's twenty judicial circuits and sixty-seven counties concerning the method of selection of circuit and county judgeships. See generally Kainen v. Harris, 769 So.2d 1029 (Fla.2000). A majority of the voters within the territorial jurisdiction of each judicial circuit court and county court voted to retain the election of those judges instead of replacing the elective system with a merit-selection system for those courts.[5] An elected circuit or county judge has a six-year term of office. See art. V, § 10(b)(3)c., Fla. Const. In contrast, the vacancy section provides that the "governor shall fill each vacancy on a circuit court or on a county court." Art. V, § 11(b), Fla. Const. The term of a judge so appointed is not for six years, as with elected judges, but rather a limited term which concludes "on the first Tuesday after the first Monday in January of the year following the next primary and general election occurring at least one year after the date of the appointment." Id.
In the situation presented by your letter, there are three candidates who qualified during the statutory qualifying period for election to the circuit judge position which at that time was held by Judge Foster.[6] The circuit judge position in consideration here became vacant on May 31, 2002, by our approval of the uncontested involuntary retirement of the incumbent circuit judge, who had not qualified for reelection. See Inquiry Concerning a *136 Judge, No. 02-176 Re: Florence Foster, SC02-1110 (Fla. order filed May 30, 2002). You advised that in accord with judicial nominating commission procedures, an appointment to fill the vacancy occurring on May 31 would likely be able to be made in September. It is, of course, possible that by the time you are able to make an appointment that one of the candidates will have received a majority of votes in the judicial election scheduled to be held on September 10, 2002.[7] If you made an appointment at that time, the election would be a nullity. Moreover, the person appointed, even if it was the person who was selected by majority vote, would then only be entitled to a term ending in January 2005, as opposed to a six-year term ending in January 2009 that an elected circuit judge would have.[8]
In view of this conflict between sections of the constitution, we conclude that the conflict must be resolved by a construction which gives effect to the clear will of the voters that circuit and county judges be selected by election. We therefore answer your question by stating that it is our opinion that upon the qualification of a candidate or candidates for a circuit or county judgeship during the statutory qualification period, the election method of selection required by section 10(b)(1) and (2) takes precedence over and forecloses the Governor's constitutional authority and obligation pursuant to section 11(b) to fill a vacancy that occurs during the balance of the incumbent judge's term of office.[9] Once the election process begins by candidates qualifying for the judge position, the election method is the method by which the judicial position is to be filled. Our opinion, however, is limited to the circumstances described in your letter, i.e., where a candidate or candidates have already qualified during the statutory qualifications period, one of whom will fill the position by election.
We understand and are aware that the length of the vacancy in this case will work a hardship on the workload in the Thirteenth Judicial Circuit because the judgeship vacated by Judge Foster will not be filled until January 2003. We are also aware of the policy concerns previously raised by our discussion of the need to avoid extended judicial vacancies. See, e.g., In re Advisory Opinion to the Governor (Judicial Vacancies), 600 So.2d 460, 462 (Fla.1992). In light of this hardship, the Chief Justice of this Court will endeavor to cover this deficiency with the use of senior judges when requested to do so by *137 the Chief Judge of the Thirteenth Judicial Circuit. See art. V, § 2(b), Fla. Const.
Chief Justice Anstead and Justice Shaw concur only in the result reached by the majority. Justice Lewis does not join in the opinion of the majority. Rather, it is the opinion of Justice Lewis that the majority rewrites the Florida Constitution. Justice Lewis finds nothing in the Florida Constitution that limits the appointment powers with reference to the phrase coined by the majority as when "the election process begins."
 Respectfully,
/s/ Harry Lee Anstead
HARRY LEE ANSTEAD
/s/ Leander J. Shaw
LEANDER J. SHAW
/s/ Major B. Harding
MAJOR B. HARDING
/s/ Charles T. Wells
CHARLES T. WELLS
/s/ Barbara J. Pariente
BARBARA J. PARIENTE
/s/ R. Fred Lewis
R. FRED LEWIS
/s/ Peggy A. Quince
PEGGY A. QUINCE
NOTES
[1] Briefs were filed by Martha J. Cook, Carlos A. Pazos, and Kenneth C. Whalen, the three putative candidates who previously qualified to succeed Thirteenth Judicial Circuit Court Judge Florence Foster.
[2] After receipt of the Governor's letter but prior to the release of our opinion, Justice Anstead succeeded Justice Wells as Chief Justice.
[3] The last sentence of section 10(b)(3)c. provides: "The terms of circuit judges and judges of county courts shall be for six years."
[4] Article V, section 11(b) provides:

The governor shall fill each vacancy on a circuit court or on a county court, wherein the judges are elected by a majority vote of the electors, by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next primary and general election occurring at least one year after the date of appointment, one of not fewer than three persons nor more than six persons nominated by the appropriate judicial nominating commission. An election shall be held to fill that judicial office for the term of the office beginning at the end of the appointed term.
[5] According to the Secretary of State's records regarding this constitutionally mandated referendum vote in the year 2000, in the Thirteenth Judicial Circuit, 100,649 persons voted for the merit-selection system and 225,140 persons voted for the elective system.
[6] The Legislature in the most recent session changed the qualifying period for judicial office, which historically had occurred during mid-July. See ch.2002-17, § 23, Laws of Fla. The period of qualifying in the instant case was from noon on May 13, 2002 until noon on May 17, 2002.
[7] See ch.2001-40, § 46, at 155, Laws of Fla.; § 105.051(1), Fla. Stat. (2001). If no candidate receives a majority of the votes cast on September 10, 2002, the two candidates who receive the most votes are to be on the ballot in November. See § 105.051(1), Fla. Stat. (2001).
[8] There are other scenarios in which an election would be a nullity if your constitutional authority and obligation to fill vacancies by appointment continued after candidates have qualified for circuit or county court positions. One such instance is where an incumbent judge runs for reelection but the incumbent judge's opponent wins the election, and then the incumbent judge resigns, dies, or is removed from office prior the commencement of the elected term of office. If the governor had the authority and obligation to fill that vacancy by appointment the election would be a nullity.
[9] We have considered the case from the First District Court of Appeal to which you referred in your letter. See Pincket v. Harris, 765 So.2d 284 (Fla. 1st DCA 2000). We find the facts of that case to be distinguishable from the facts set forth in your letter on the basis that in Pincket no person had qualified for the election at the time the vacancy occurred because the qualification period had not yet occurred. See id. at 285; § 105.031(1), Fla. Stat. (2000).